Deshler v. Holmes.

H. Virginia Deshler, appellant,

v.

Samuel Holmes et al., respondents.

The obtaining of a decree of foreclosure on a mortgage fixes the amount of the debt, and, as the decree draws but six per cent. interest, if the mortgagor, for several years thereafter, by mistake, pays seven per cent. (the legal rate when the bond was given, and for which it was drawn), he is entitled to have the one per cent. excess credited on the decree.

On appeal from a decree, advised by *Frederic W. Stevens, Esq.*, Advisory Master, who filed the following conclusions:

The material facts are these:

Samuel Holmes, one of the defendants, executed to H. Virginia Deshler, the complainant, on April 27th, 1876, a bond and

Note.—If a bond or note and mortgage bear ten per cent. interest (the legal rate), and judgment is recovered on the bond, a decree afterwards obtained on the mortgage will bear only six per cent., *Wayman* v. *Cochrane, 35 Ill. 152; Guernsey Bank* v. *Kelley, 14 Ohio St. 367;* and if the judgment bears no interest, the decree will bear none, *Heydle* v. *Hazelhurst, 4 Bibb 19;* and so as to a judgment on a note secured by a vendor's lien, if such lien be afterwards enforced, *Palmer* v. *Harris, 100 Ill. 276; Stricklin* v. *Cooper, 55 Miss. 624.*

In *Walker* v. *Penry, 2 Vern. 42, Prec. in Ch. 50,* on a mortgagor's bill to redeem a mortgage bearing eight per cent. interest, which rate he continued to pay voluntarily after the legal rate had been reduced to six—*Held*, that he could not be relieved as to the two per cent. excess, by having it credited on the principal. This was affirmed on a rehearing, *2 Vern. 78,* but was doubted on a subsequent bill of review, *2 Vern. 145;* and see *Proctor* v. *Cooper, Prec. in Ch. 116; Hedworth* v. *Primate, Hardres 318; Rex* v. *Allen, T. Raym. 196; Nutting* v. *McCutcheon, 4 Minn. 382.*

In *New York Life Ins. Co.* v. *Manning, 3 Sandf. Ch. 58,* a debtor on a mortgage bearing six per cent. interest, who for several years paid interest on his debt at the rate of seven per cent., taking receipts thus expressed, was held not entitled to have the excess thus paid applied towards extinguishing the principal. Also, *Reynolds* v. *Rondabush, 59 Ind. 483; Sims* v. *Squires, 80 Ind. 42;* see *Mauer* v. *Wilson, 16 S. C. 469.*

mortgage to secure the payment of $12,000, with interest at seven per cent.

The principal sum not being paid at maturity, and Holmes not being, at that time, able to pay, as he was requested, $2,000 on account of the principal, the complainant filed her bill to foreclose on September 13th, 1879, Blake & Freeman acting as her solicitors.

No defence was interposed, and on November 29th, 1879, a final decree was entered for $15,224.60 debt and $103.33 costs, and a writ of *fi. fa.* was placed in the hands of the sheriff, who advertised that the property would be sold on February 17th, 1880. The sale was adjourned, and on March 13th, 1880, the sheriff was instructed to stay proceedings, for the reason that on March 9th, 1880, Holmes had paid $1,000 on account of the principal, and had agreed to pay $1,000 more in the following July. This he did, and also paid costs and sheriff's fees, amounting to $195.62. He had not defaulted in the payment of interest, and the foreclosure was not instituted on that ground. After the proceedings

In *Story* v. *Kimbrough, 33 Ga. 21*, two notes for usurious interest on a principal secured by a chattel mortgage were given by the defendant to the plaintiff, which were paid. The mortgagee afterwards foreclosed for the principal, but before sale the defendant gave another note for the interest for the ensuing year at a usurious rate, which being unpaid at maturity, the plaintiff issued execution under his foreclosure.—*Held*, that only legal interest was recoverable on the decree from the time of its entry, and that defendant was entitled to credit on the principal of the amount of the two notes he had paid.

In *Andrews* v. *Campbell, 36 Ohio St. 361*, it was held that payments of ten per cent. interest on a note, under an agreement to that effect, when such rate was illegal, are not binding on the payer, but may be recouped and credited on the principal; also, *Samyn* v. *Phillips, 15 Ohio St. 218; Mueller* v. *McGregor, 28 Ohio St. 265; Bowen* v. *Phillips, 55 Ind. 226.*

In *Gordon* v. *Shallcross (Pa.), 4 Am. Law Reg. 309*, after the *satisfaction* of a foreclosed mortgage, the mortgagee was held entitled to recover on the bond the interest accrued on the original debt between the day of sale under the foreclosure and the actual receipt of the money on final distribution; see *Mohn* v. *Hiester, 6 Watts 53.*

If a note bears no interest, but the maker nevertheless pays interest thereon, by mistake, the amount is to be applied as a payment on the principal, *Carr* v. *Robinson, 8 Bush 269.*

As to what constitutes a mistake of law and a mistake of fact in computing interest, see *Baker* v. *Baker, 4 Dutch. 13.*—REP.

Deshler v. Holmes.

under the *fi. fa.* had been stayed, both parties practically disregarded the decree, and Holmes, just as if no decree had been entered, continued to pay interest at seven per cent. on the footing of the bond and mortgage alone. This is apparent both from the amount paid, viz., seven per cent. on $10,000, and also from their correspondence and the form of the receipts.

Thus, on July 3d, 1883, Holmes wrote to Jacob F. Wyckoff, the agent of the mortgagee, as follows:

" Please find my proportion of interest due on the 1st, on Holmes's *mortgage*," &c.

On July 3d, 1884, he wrote as follows.:

" Herewith please find check $175, for 6 mos. int. on V. Deshler *mortgage*, one-half," &c.

and on January 2d, 1886, as follows:

" I send under protest check on Deshler *mortgage.*"

In other letters he treats the money sent as payment of interest " on the bond," or " on the bond and mortgage."

J. F. Wyckoff, who had the exclusive management of the complainant's interests so far as this mortgage was concerned, in response to these letters, sent receipts in which the terms " bond," " bond and mortgage," and " mortgage " appear indifferently.

It is perfectly apparent from the correspondence and receipts that the decree, creating a new principal sum, was overlooked or disregarded. It does not, however, appear that this was done by virtue of any express agreement.

After defendant had made a payment of interest up to January 1st, 1887, he discovered that the decree had been entered for too large an amount, he not having been credited with interest paid prior thereto.

He was furthermore advised that he had been paying too much interest, viz., seven per cent., on the amount of the original bond and mortgage, less $2,000, instead of six per cent. on the amount of the decree corrected, less a like amount.

He thereupon made a tender of $9,375, the amount he con-

ceived to be really due. Mrs. Deshler refused to accept it, and on July 8th, 1887, she commenced suit on the bond in the supreme court. Then Mr. Holmes presented the petition which is now the subject of consideration, praying that the suit in the supreme court may be restrained, and that Mrs. Deshler may be required to deliver up the bond and mortgage upon payment to her of the amount really due. The matter is now before the court on this petition, the answer thereto, and the proofs.

The petitioner's claim is two-fold.

*First.* He insists that the decree was originally entered for too large an amount, he not having been credited with the interest he had paid prior to the entry thereof.

This complainant admits.

*Secondly.* He insists that the act of 1878 (*Rev. Sup. 398*) having changed the rate of interest, and the decree having been entered after the act took effect, he ought, after November 29th, 1879, the date of the decree, to have been charged with interest thereon at the rate of six per cent. only, and not at the rate of seven per cent. on the amount secured by the bond and mortgage, less the $2,000 paid on account.

With reference to the first insistment, it seems to me clear that, in view of the complainant's admission, the decree should be corrected so far as concerns the amount decreed to be due. If corrected, it must have the same effect upon the parties now as if it had originally been entered for the amount really due.

The debatable question is, How shall we deal with the payments made since its entry ?

The bond and mortgage, though separate instruments giving distinct remedies, have reference to the same debt. Precisely similar remedies might have been given by a single instrument. *In re European Central Railway Co., L. R. (4 Ch. Div.) 33.*

Had they been so given the rights of the parties would have been the same. In either case, there would have been but one debt subsisting between complainant and Holmes, and that a debt of $12,000.

Now, what did the complainant do ? She foreclosed her mortgage by a bill which prayed a sale of the mortgaged prem-

ises to satisfy the debt due her, and which also prayed a decree for the payment of any excess of the mortgage debt above the net proceeds of sale. In the course of the proceeding, therefore, it became absolutely necessary to ascertain the precise amount of this debt.

The statute itself requires its ascertainment, in order that the officer who sells under the *fi. fa.* may be able, out of the proceeds of sale, to pay it off. *Rev., p. 117*, § *72*.

Its ascertainment, too, is necessary, in order to lay a foundation for the decree of deficiency.

But what is the debt which it is necessary thus to ascertain? It is the only debt due from Holmes to complainant.

It is the debt evidenced by the bond and mortgage. But having been once ascertained in the presence of the parties in the course of a proceeding in which it was indispensably necessary to ascertain it, it follows that the decree adjudicating what is due must forever settle the amount defendant owes complainant.

Upon payment of this amount the mortgagor is entitled to a delivery up and cancellation of both bond and mortgage. *Matter of Coster, 2 Johns. Ch. 503.*

While it is undoubtedly true that the bond does not merge in the decree (*Copperthwait* v. *Dummer, 3 Harr. 258*), it must be equally true that there cannot be more due on the bond than on the decree, for if there was there would then be two different debts subsisting at the same time between the same parties in respect of the same loan, whereas we have seen that there is but one.

The reason why the suit may proceed on the bond at the same time that the mortgage is being foreclosed, is that by the contract of the parties two separate remedies are given, and the one is in nowise inconsistent with the other, but still both of these remedies are afforded in respect of the same debt, the amount of which having once been judicially ascertained cannot, on familiar principles, afterwards be questioned. If in his suit on the bond prosecuted after decree in foreclosure, the plaintiff should demand more than by the decree he is shown to be entitled to, I cannot see why the defendant would not be at liberty to produce the

record of that decree, for the purpose of showing the amount really due.

But it is insisted by complainant that the bond, not having been merged in the decree, remains as a part of the contract between the parties, which contract complainant is at liberty to enforce; and inasmuch as this bond calls for seven per cent. interest, the complainant is at liberty to collect it. This is only another mode of stating the proposition heretofore shown to be fallacious. If the decree conclusively establishes the amount due as between the parties, then in order to ascertain the amount we must have recourse, not merely to the bond, but also to the decree, and if on the decree we find that there is a certain sum of money due for principal, plus a certain other sum of money due for interest computed at the rate of six per cent. per annum ( *Wilson v. Marsh, 2 Beas. 289*), that sum must be taken in preference to any amount which may appear to be due from a simple inspection of the bond.

This reasoning may be tested in a way which leaves no doubt as to its soundness. Suppose a year after the decree had been entered, the complainant had accepted from the petitioner the amount due according to its terms. Would the complainant thereafter have been at liberty to bring his action on the bond and recover the additional one per cent. ?

If complainant's insistment be correct, there is no reason why the action would not lie. If the defendant may, in respect to the same debt, be indebted to the complainant at the same time in two different amounts, then if the decree happen to be for the smaller amount, he may still insist upon the difference and sue upon the bond.

But if he cannot make this·claim, it can only be for the reason that he has been paid in full as to both securities.

It is further insisted by complainant that the parties abandoned the decree and dealt with each other on the basis of the bond, and treated it as a valid subsisting instrument in full force and effect.

As to this, it is sufficient to say that there is no evidence of abandonment. So far from abandoning it, it appears that the

Deshler v. Holmes.

defendant, Holmes, paid to Blake & Freeman, the solicitors of complainant, the full amount of the costs adjudged, and that the complainant or her solicitors directed the sheriff to stay the sale *until further written order.*

If it was not abandoned it necessarily remained in force between the parties, and determined the measure of their respective rights and liabilities.

It may be doubted whether, after the decree had determined the amount due, and established a new rate of interest, it would have been competent for the parties, in the face of the act of 1878, to have entered into any new contract for a higher rate; but this question does not arise, for there is no evidence, and complainant's counsel on the argument admitted that there was no evidence, going to establish a contract, whereby the parties waived the decree and agreed to let the bond and mortgage stand as the sole measure of their respective rights. All that counsel contended for was, that the parties, in their subsequent dealings, tacitly reverted to the terms of the bond and mortgage and took no notice of the decree, of whose existence complainant, for the reason that she acted by agent, may have had only constructive notice.

Had the parties made a new and valid contract, the case might have been likened to that found in *In re Agriculturist Ins. Co., L. R. (4 Ch. Div. 34,) (n).* As it stands, it is not, in some respects, unlike *Ex parte Oriental Fin. Co., L. R., (4 Ch. Div.) 33.*

It is furthermore insisted by the complainant, that the interest at seven per cent. (as provided in the bond) was paid voluntarily and with full knowledge of all the facts, and that the defendant, Holmes, (even if such payment were not obligatory) is not entitled to recover it back or be credited with it, as prayed, which complainant insists is the same thing.

The general rule on this subject is thus stated by Mr. Justice Depue, in *Eaton* v. *Eaton, 6 Vr. 290, 293 :* " Where a person, with a full knowledge of the facts, voluntarily pays money which the law would not compel him to pay, but which, in equity and conscience, he ought to have paid, he has no remedy to recover it back. From a payment made under such circumstances, no

Deshler *v.* Holmes.

promise will be implied to refund the money, there being nothing against conscience in the party who received it retaining it."

And the reason of this rule is, to use the language of the Chief-Justice, in *Jersey City* ads. *Riker, 9 Vr. 225, 226,* " that the party paying had an opportunity to dispute the claim, and that, having waived it at his own volition, it is impolitic to permit him to overhaul the transaction by an aggressive action. The doctrine is intended to be repressive of litigation, and. is promotive of the policy expressed in the maxim : *Interest reipublicœ ut sit finis litium."*

It is clear that the present case does not fall within this rule. The defendant is not seeking to recover back any money which he voluntarily paid, and whose payment he might have resisted. He asks only to have credited on the decree the money that he has in fact paid. Had he, pending the action on the bond, actually paid all that the plaintiff in that action claimed to be due, he might not then, in a subsequent action, brought by himself, have been able to recover back what he had overpaid, for the reason that he had, in the first action, an opportunity to show what was actually due, and failed to avail himself of it.

The case, then, is simply this : The parties for the time being are under a misapprehension as to their legal rights and liabilities, and pay money on the footing of such misapprehension. Before the whole amount really due had been paid, the debtor finds out his mistake and refuses to pay more than is due according to the terms of the decree. What estoppel is there to this claim ? Will he be compelled to pay more than he is legally bound to pay ? If he can show that he has actually paid, on the very obligation, all that it, in terms, calls for, is he not in law discharged, and that, too, even if he has erroneously called his payments payments of interest, they being really, in part, payments of principal ? Suppose the maker of a note, payable with interest at five per cent., under an erroneous impression as to the rate, actually pays for a time six, will he not be entitled to a credit of one per cent. on the principal ? How does the case in hand differ in principle from this ? In both it is the belief of

the debtor that he is legally liable for one sum, whereas, in fact,. he is legally liable for another.

The remaining point made by the complainant, viz., that the petitioner is not to be credited with the interest paid by his co-obligor or co-owner, is obviously untenable.

It appears that, during a part of the time, Holmes owned the property as tenant in common with another. The two co-owners contributed each his share of the interest. There is no attempt by either to recover back anything actually paid. Why Holmes should not be entitled to the benefit of all payments made on account of the debt, I cannot conceive.

A tender was made prior to the filing of the petition, but was not followed up by a payment into court. This, I think, prevents the defendant from insisting that interest is not payable since the date of the tender. *Shields* v. *Lozear, 7 C. E. Gr. 447.*

*Mr. John W. Taylor,* for appellant.

The relief asked by the respondent, in his petition in the cause below, is based on the legal proposition " that by the law of the land the contract made by him and said William B. Holmes, to pay interest at the rate of seven per cent. per annum on the principal sum mentioned in said bond, became merged in said decree rendered by this court, and that, therefore, the petitioner and his co-defendant are only chargeable with interest at the rate of six per cent. on the amount actually due."

I. The bond, or contract embodied therein, did not become merged in the decree.

1. The decree was simply a means of payment of the bond,. being for a sale of the mortgage premises to pay the debt due on the bond.

2. The effect of a sale under the decree is the same as that under a power of sale—to exhaust the lien in reduction or payment of the debt due on the bond.

3. If a decree in a foreclosure suit would effect a merger of the bond, then the pendency of such a suit would be a bar to a subsequent action on the bond; but it is well settled that the

pendency of a foreclosure suit on a mortgage is not pleadable in bar to an action on the bond. *Copperthwait* v. *Dummer, 3 Harr. 258.*

Says Hornblower, C. J., in that case : " It has never before been attempted, that I know of, to plead a suit in equity on a mortgage for a foreclosure, as a bar to an action at law on the bond to secure which the mortgage has been given."

" The general rule is, that the mortgagee may exercise all his rights at the same time, and pursue his remedy in equity on the mortgage, and his remedy at law on the bond or covenant accompanying it concurrently." *4 Kent's Com. 183 ;* see *2 Jones on Mort.* §§ *1224, 1228 ; Hatch* v. *White, 2 Gal. 152 ; Dunkley* v. *Van Buren, 3 Johns. Ch. 331 ; Globe Ins. Co.* v. *Lansing, 5 Cow. 380 ; Lansing* v. *Goelet, 9 Cow. 346.*

4. As stated in *Dawes* v. *Wheeler, 16 Vr. 68 :* " A suit for the foreclosure of a mortgage and the sale of the mortgaged premises is a proceeding *in rem."*

(1) The decree is for a sale of the mortgaged premises for the payment of the amount due on the bond.

(2) It is not a decree against defendant for the payment of money, nor at all analogous to a judgment for the recovery of money.

(3) There is an ascertainment of the amount due, but merely for the purposes of the sale of the *res.*

(4) Such a decree does not change the character or form of the debt, is not a higher security, or any security for the debt, nor does it take away or impair the remedies for the enforcement of the debt ; nor could it (as in the case of a judgment or decree *in personam*) even be the basis of a suit or action.   See *Freeman on Judgments (3d ed.)* § *215.*

5. The incidental decree, that " in case the proceeds of such sale shall be insufficient to satisfy and discharge the said mortgage debt, then * * * that said deficiency shall be made of the lands and tenements, goods and chattels of the said defendants, Samuel Holmes and William B. Holmes," did not have the force and effect of a judgment at law, or operate as a merger of the bond. *Jersey City* v. *Lembeck, 4 Stew. Eq. 265, 266.*

(1) A personal decree for deficiency of proceeds of sale has not the force and effect of a judgment at law, until the excess of the mortgage debt over the proceeds of sale has been ascertained. *Mutual Life Ins. Co.* v. *Southard, 10 C. E. Gr. 337*; *Bell* v. *Gilmore, Id. 104*; *Dawes* v. *Wheeler, 16 Vr. 67*; *2 Jones on Mortgages,* §§ *1709, 1720;* see *Ins. Co.* v. *Hopper, 12 Atl. Rep. 528.*

(2) The contingency in which the decree for deficiency would become effective never happened, and never can happen, as the parties settled the suit and abandoned the decree, and dealt with each other on the basis of the bond, and treated it as a valid, subsisting instrument, in full force and effect. See *Thomas on Mortgages (2d ed.)* § *833* ; *Van Wagenen* v. *La Farge, 13 How. Pr. 16* ; *In re Ins. Co., L. R. (4 Ch. Div.) 34, note.*

(3) Dealing with each other on the footing of the bond, as an unmerged, subsisting contract (as they had a right to do), it was lawful to receive the rate of interest (seven per cent.) stipulated by the bond, until the actual repayment of the money. *Jersey City* v. *O'Callaghan, 12 Vr. 349.*

II. The interest at seven per cent. (as provided by the bond) was paid voluntarily and with full knowledge of all the facts ; and the petitioner (even if such payment was not obligatory) is not entitled to recover it back, or be credited with it, as prayed, which is the same thing. See *Jersey City* v. *Riker, 9 Vr. 225* ; *Eaton* v. *Eaton, 6 Vr. 290* ; *2 Smith's L. C. (8th ed.) 421, 451, 452, 456* (as to protest) ; *2 Chitty on Con. (11th ed.)* §§ *933, 934; Kerr on F. & M. (B.'s ed.) 396, 397* ; *7 Wait's A. & D. 402* § *18.*

III. Certainly, the petitioner cannot recover back, directly or indirectly, or be credited with, or allowed for, the alleged excess of interest paid by his co-obligor or co-owner, who, as appears, paid one-half thereon, down to July, 1886, at least.

IV. Assuming that the petitioner is entitled to recover, or be allowed, for the excess of interest paid by him, his tender cannot be made available for the purpose for which it was made.

1. The amount tendered was insufficient, as it was based on

the petitioner's right to be allowed for what somebody else over-
paid.

2. The money tendered should have been paid into court on
filing his petition and obtaining the order granted thereon.

Tenders are *stricti juris*, and are never supplied by equity.
*Arrowsmith* v. *Van Harlingen, Coxe 26; Shotwell* v. *Denman,.
Id. 274.*

No less strictness is required in equity than at law. The
amount tendered must be kept in readiness, and on a bill to
redeem, or a plea or answer setting up a tender, the money must
be paid into court. *Shields* v. *Lozear, 7 C. E. Gr. 447; Stock-
ton* v. *Dundee Mfg. Co., Id. 56.*

This application is analogous to a bill to redeem.

V. Some observations on the opinion of the Advisory Master.

1. The Master referring to the fact that the debt must be
ascertained, " in order that the officer who sells under the *fi. fa.*
may be able out of the proceeds of sale to pay it off," says : "But
having been once ascertained in the presence of the parties
*    *    *    it follows that the decree adjudicating what is due
must forever settle the amount defendant owes complainant."

(1) It undoubtedly settles the amount for the purposes of the
foreclosure proceedings ; but, according to the Master's conclu-
sion and decree, it does not " forever settle it," even for that
purpose.

(2) It is very doubtful whether such a decree would be con-
clusive evidence in a suit at law on the bond.

(*a*) The decree, being for the purpose merely of the foreclosure,.
ascertains not the principal only, but the principal and interest
then due, making a new principal for the purposes of foreclosure.
But that new principal cannot be transferred to the bond and'
substituted for the principal named in that instrument.

In a suit on the bond, the principal therein named would be
taken as a basis, and interest at the rate therein mentioned would
be computed on that principal, and credit given for whatever net
amount may have been realized by the foreclosure sale.

(*b*) In case of doubt, the decree confirming the Master's report

Deshler *v.* Holmes.

of the amount due might perhaps be some evidence as to the amount due at the time, but would not be conclusive.

2. The Master agrees that the bond is not merged, and yet he virtually holds that the stipulation as to seven per cent. interest is merged; and he remarks as follows in that connection:

"This reasoning may be tested in a way which leaves no doubt as to its soundness. Suppose a year after a decree had been entered, the complainant had accepted from the petitioner the amount due according to its terms, would the complainant thereafter have been at liberty to bring his action on the bond and recover the additional one per cent.?"

The hypothesis leaves no doubt in my mind as to the unsoundness of the reasoning.

(1) If the complainant settles on the basis of the decree, by accepting the amount due on it, or prosecutes his remedy on the foreclosure proceeding, and recovers the full amount from the proceeds of sale of the *res*, he would then, on familiar principles, be enjoined from prosecuting the bond and be compelled to surrender it.

(2) But suppose that he neither accepted the amount of the decree in settlement, nor prosecuted his foreclosure remedy, both parties abandoning or disregarding the foreclosure proceedings, and dealing with each other on the footing of the bond alone, would that arrangement be unlawful?

3. But the Master says: "There is no evidence of abandonment."

(1) The costs, sheriff's fees, interest and $2,000 of the principal of the bond were paid, the sale indefinitely stayed, and matters put in the position in which the complainant insisted they should be before the suit was commenced, as a condition of refraining from the suit; then the parties dealt with each other (as the Master admits) on the footing of the bond and mortgage alone, for more than seven years.

(2) The Master seems to think that it was not competent for the parties to disregard the decree, without some formal and express contract for the purpose.

(3) That they actually did disregard the decree and recur to

38

the basis of the bond, is certain; whether it was the result of an express contract, or a tacit one, is of no consequence.

It is submitted that the order appealed from is erroneous, and should be reversed.

*Mr. Thomas N. McCarter*, for respondent.

I. The answer of complainant to the petition consents that the original decree of foreclosure may be amended, so as to fix the amount thereof at $12,000, with interest from July 1st, 1879, to date of decree.

These fully justify the finding and decision of the court below on that point.

II. The effect of the decree of foreclosure was to merge the contract to pay interest in the decree, so as to constitute a new principal sum on which interest was to be computed thereafter, not by virtue of the contract, but by operation of law, and such computation must be at the rate allowed by law at the time of the decree, without regard to that stipulated for in the contract. *Wilson* v. *Marsh, 2 Beas. 289; Verree* v. *Hughes, 6 Hal. 91; Cox* v. *Marlatt, 7 Vr. 389; Olden* v. *Hallett, 2 South. 535; Barnes* v. *Gibbs, 2 Vr. 317; Prest* v. *Van Ars'lalen, 6 Hal. 194; Rev. 113, § 56; Matter of Costar, 2 Johns. Ch. 503; Taylor* v. *Wing, 84 N. Y. 471, 477; Wills* v. *Davis, 105 N. Y. 670.*

III. The debt evidenced by the bond and secured by the mortgage is but one debt, and although the remedies on the different instruments may be different, any judicial proceeding on either, which determines the amount of debt due, establishes the amount for both. *Gregory* v. *Marx, 8 Biss. 44; Boone on Mortgages § 210; Jones on Mortgages §§ 1227, 1228; Ib. § 71; In re European Central Railway Co., ex parte Oriental Financial Corp., L. R. (4 Ch. Div.) 33; Rev. 701, 702; Shields* v. *Lozear, 5 Vr. 496; Leake* v. *Chambers, 1 South. 33; Den* v. *Kimble, 4 Hal. 335; Hamilton* v. *Dobbs, 4 C. E. Gr. 227; Cocke* v. *Hutchins, 4 S. W. Rep. 170; Lewis* v. *Conover, 6 C. E. Gr. 230.*

IV. The doctrine that money voluntarily paid cannot be recovered back, has no application to this case. Here no money is

PER CURIAM.

This decree affirmed, for the reasons given by the Advisory Master.

*For affirmance*—THE CHIEF-JUSTICE, REED, SCUDDER, BROWN, CLEMENT, COLE, McGREGOR—7.

*For reversal*—DEPUE, DIXON, GARRISON, KNAPP, MAGIE, PATERSON, WHITAKER—7.